**UNITED STATES of America**

v.

**Jerome CANTOR, a/k/a "Jerry," a/k/a "The Teacher", et al.**

**Crim. No. 70-454.**

United States District Court,
E. D. Pennsylvania.

May 26, 1971.

Richard T. Spriggs, Philadelphia, Pa., for plaintiff.

Mitchell Lipschutz, Edward Reif, Hal F. Doig, Benjamin R. Donolow, Leonard M. Sagot, Burton Satzberg, William D. Harris, Edmund DePaul, F. Emmett Fitzpatrick, Jr., Philadelphia, Pa., Frank E. Vittori, Camden, N. J., A. P. Filip-

pone, Philadelphia, Pa., Edward I. Feinberg, Atlantic City, N. J., for defendants.

## OPINION AND ORDER

VANARTSDALEN, District Judge.

Defendants are charged with a violation of interstate gambling laws. They are alleged to be involved in a conspiracy to obtain gambling information and accepting wagers on national sporting events. Attached as Exhibit # 1 is a complete list of all motions filed on behalf of the various defendants. The motions are largely based on similar allegations. I will, therefore, consider the motions jointly. To the extent that any motion raises an allegation unique as to the other defendants, I will consider it separately.

■ All defendants have filed motions for discovery and inspection pursuant to Rule 16, F.R.Crim.P. (1968). By my order of March 2, 1971, as amended March 12, 1971, a complete copy of the intercepted communications was made available to all defendants. Further, defendants and their counsel have been furnished with or given a reasonable opportunity to inspect and copy all material in the possession of the government contemplated by Rule 16(a). To the extent that any of the motions contemplate discovery and inspection of internal government documents and reports or the statements of government witnesses or the recorded testimony of witnesses, other than the defendants, before a grand jury, those motions will be and are hereby denied. See title 18, U.S.C., Section 3500(a) (1968).

■ All defendants have filed Motions for a Bill of Particulars. Count I of Indictment # 70–454 charges a conspiracy to commit offenses in violation of title 18, U.S.C., Section 1952.

"It was the object of said conspiracy that the defendants would carry on and facilitate the carrying on of an unlawful activity consisting of a business enterprise involving gambling offenses in violation of the laws of the States in which such offenses were committed, namely: Title 18, Purdon's Pennsylvania Statutes Annotated, Section 4607; Title 2A, New Jersey Statutes Annotated, Section 2A:112–3; Chapter 10, California Penal Code, Section 337a; Article 225, New York Penal Law, Section 225.05.

"It was the further object of said conspiracy that the defendants would use interstate telephone facilities and would cause interstate telephone facilities to be used with intent to carry on and facilitate the carrying on of said unlawful activity and that the defendants would thereafter perform and cause to be performed acts to carry on and facilitate the carrying on of said unlawful activity."

Forty-four overt acts are specified in that count which particularize the conspiracy to the various defendants. Having read the indictment, I find it to be sufficient in that it informs each defendant of the nature of the charge against him. Rule 7(f), F.R.Crim.P. (1968), leaves this matter to the discretion of the court. United States v. Cudia, C.A.Ill.1965, 346 F.2d 227, cert. denied, 382 U.S. 955, 86 S.Ct. 428, 15 L.Ed.2d 359; United States v. Jaskiewicz, D.C.Pa.1968, 278 F.Supp. 525; United States v. Stein, D.C.Pa.1966, 249 F.Supp. 873 (see also cases cited at pp. 476–477, 18 U.S.C., F.R.Crim.P., Rule 7, ann. # 359, 1966; also 1971 pocket part, p. 31). I find the indictment to be sufficient and therefore defendants' motions for a Bill of Particulars are hereby denied.

■ Most of the defendants have moved for a separate trial. Rule 14, title 18, U.S.C., F.R.Crim.P. (1968), Rule 14, is directed to the sound discretion of the court. The purpose of the Rule for Relief from Prejudicial Joinder appears to be to promote economy and efficiency and to avoid a multiplicity of trials, where this objective can be achieved without a substantial prejudice to the rights of defendants to a fair trial. Burton v. United States, No. 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. (See cases cited at ann. # 15, title 18 U.S.

C.A., F.R.Crim.P., Rule 14, page 650; 1971 pocket part p. 59). In the recent Third Circuit case of United States v. Barber et al., 442 F.2d 517 (C.A.3rd 1971), filed April 14, 1971, the court had occasion to point out that a severance is within the discretion of the trial court. It appearing that all defendants are charged with a conspiracy as set forth in Count I of Indictment # 70–454 and particularized by the overt acts therein set forth, no defendant will be unduly prejudiced by a joint trial. United States v. Barber, *supra.* The defendants' argument that they will be prejudiced by a trial with some 15 other defendants simply because of the number of defendants lacks sufficient merit and this matter can be handled by special interrogatories to the jury. Defendants' motions for severance are hereby denied.

Defendants' motions to dismiss the indictment are found to be without merit and are, therefore, denied.

### MOTION TO DISMISS WIRE TAP EVIDENCE

An evidentiary hearing was held on the defendants' motion to suppress certain intercepted telephone communications. All counsel for defendants were given timely notice of the hearing but only a few deemed the matter important enough to attend. On the first day of the hearing when all counsel were present, I ruled that all defendants would be bound by evidence produced at the hearing. It was understood that any counsel could submit any evidence he thought relevant to this issue. However, the only live testimony was that of the FBI agents who were connected with the case.

Upon the application of J. Shane Creamer, then Assistant United States Attorney, Philadelphia Strike Force, Organized Crime Division of the United States Department of Justice, and the affidavit of Edward D. Hegarty, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, an order was entered by John W. Lord, Jr., Chief Judge of this district, which order, authorized the interception of telephone conversations on two telephone numbers (215 TU6–5999, 215 TU6–1429).

Defendants' primary argument is that the affidavit is not sufficient on its face to show probable cause and thus the Order authorizing the wire tap was illegal and any evidence obtained by the wire tap must be suppressed. Defendants' second argument is that the statute circumscribing the issuance of the wire tap order was not complied with in that there was no showing that the Attorney General of the United States sanctioned the request and that the inventories were not filed within the proper time. Defendants also attack the constitutionality of the wire tap statute; however, no evidence was offered on this point.

█ I will first consider the evidence offered to show that the application was properly made.

Section 2516 of 18 U.S.C.A., Section 2516 (1968) reads in pertinent part as follows:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of—

\*    \*    \*    \*    \*    \*

(c) any offense which is punishable under the following sections of this title: \* \* \* section 1084 (transmission of wagering information) \* \* \*

\*    \*    \*    \*    \*    \*

(g) any conspiracy to commit any of the foregoing offenses."

At the hearing the Government offered two letters which were received in the regular course of business by the Philadelphia Strike Force, Organized Crime Division of the United States Department of Justice. One letter was signed by John Mitchell, United States Attorney General, authorizing Mr. Will Wilson, Assistant United States Attorney General, to make the application for a wire tap in this case. The other letter, signed by Mr. Will Wilson, Assistant United States Attorney General, authorized the Philadelphia Strike Force to make such application. These letters were received in evidence over defendants' objection because they were received in the regular course of business of the Philadelphia Strike Force, Organized Crime Division of the United States Department of Justice. Based on these letters, I find that the application was authorized in conformity with the above section of the statute. It would seem entirely unnecessary and inappropriate to require at such a hearing direct oral testimony from the Attorney General of the United States and Mr. Will Wilson that the application to Chief Judge Lord for a wire-tap order was authorized.

## SUFFICIENCY OF THE AFFIDAVIT

■ I have carefully read this 19-page affidavit and for the reasons set forth, *infra*, conclude that it is sufficient.

Title 18 U.S.C.A., Section 2518(1)(a) (1968) has been complied with. (See p. 1 of the affidavit.)

### 1. COMPLETE STATEMENT OF FACTS

Subsection (b) of Section 2518(1) provides as follows:

"(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and lo-

cation of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted."

A fair reading of the entire affidavit meets the requirement of subsection (1)(b) in that a full and complete statement of the facts and circumstances relied on by the affiant to justify his belief that an order should issue is presented.

At the oral argument on the motions to suppress, counsel argued that the affidavit was not complete because the affiant allegedly purported to be an expert in gambling on sporting events when in fact he is not an expert. A fair reading of the affidavit, however, does not lead one to believe that the affiant is holding himself out to be an expert in this field. Further, counsel argues that at the hearing it was learned that confidential informants #2 and #3 were not the informants of the affiant but rather the informants of another FBI agent. To the extent that this fact would have any effect on the affidavit, it will be discussed *infra*.

■ Next, counsel argues that certain information obtained from a wire tap in New Jersey was made part of the affidavit in this case, which information, if illegally obtained, should have been excluded from the affidavit. There is no showing nor even factual allegations that the New Jersey wire tap was illegal. The testimony is to the effect that this wire tap was authorized by a court order through the United States Courts in New Jersey. Further, it is doubtful that these defendants would have standing to object to that evidence even if it were illegally obtained. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1969).

The information from the New Jersey wire tap was a part of the facts and circumstances which formed the basis of affiant's belief that probable cause for a wire tap order existed. Under this stat-

ute it should be a part of the affidavit so that its sufficiency can be scrutinized by the independent judge whose function it is to consider all of the facts. Indeed, the statute appears to make it mandatory that the affiant disclose all facts which affiant deems pertinent on the issue of "probable cause", regardless of how, when or where such information was obtained. I conclude that inclusion of the information from the New Jersey wire tap in the affidavit was proper.

The affidavit describes the offenses involved on page 1, paragraph 2, Affidavit. Page 2, paragraph 3D of the affidavit gives a description of the place where the communications are to be intercepted. Page 1, paragraph 3A states the nature of the communications sought to be intercepted. Page 1, paragraph 2, Affidavit, names the individuals allegedly committing the offense, whose communications are to be intercepted.

Page 2, paragraph 3C of the affidavit recites that normal investigative procedures have been unsuccessful and probably will not succeed in the future. 18 U.S.C.A. § 2518(1) (c) 1968.

Page 2 of the application states that 15 days is the period of time for which the interception is required. 18 U.S.C.A. § 2518(1) (d) 1968. Since no previous application had been made with respect to these individuals, subsection (e) of Title 18 U.S.C.A. 2518(1) does not apply. Thus, the application and supporting affidavit contains the information required by Section 2518(1).

It appears from the record that the Chief Judge did not request additional information and since title 18, Section 2518(2) is discretionary, no comment is necessary. I also decline to comment upon defendants' indirect contention that the Chief Judge did not read the application. The testimony of the affiant, who was present when the order was signed, shows affirmatively that the Chief Judge read the affidavit.

## 2. SHOWING OF PROBABLE CAUSE

Title 18, Section 2518(3) reads as follows:

"(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to comit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

In essence this section requires a showing of probable cause by the facts submitted in the application and affidavit. Defendants urge that this "most insidious means of violating privacy" must be circumscribed by the strictest type of probable cause. Since this statute is relatively new, no cases have been cited wherein the concept of probable cause is given a novel interpretation by this act. It is reasonable to conclude that the probable cause required by this statute is the same that is necessary to obtain the issuance of a search and seizure warrant. It is noteworthy, however, that a search and seizure warrant may issue by a Magistrate, but only a United States Judge may, under the Act, issue a wire tap order.

At the hearing defense counsel were given more than ample opportunity to examine government witnesses as to the validity of almost each word in the affidavit. This examination was probably beyond the scope of what is permissible since in determining the existence or lack of probable cause this court can only look to the facts presented to the judge who issued the order, United States v. Rugendorf, 376 U.S. 528, pp. 531, 532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

Looking at the entire affidavit, the basis for probable cause is grounded on information from four confidential informants, information gained from personal surveillance of defendants, Jerome Cantor and Howard Rubin, and information from an authorized wire tap on the phone of Albert Massi in New Jersey. At this point, it is appropriate to summarize the information from the confidential sources, after which I will determine whether this information meets recent Supreme Court criteria.

Confidential Informant #1 is known personally by the affiant. The affidavit reflects that this informant had furnished agent Hegarty (affiant) with reliable information in the past. Further, Confidential Informant #1 says he knows Jerome Cantor, Howard Rubin and Harvey Berke personally and knows from personal knowledge that they are associated with each other in the bookmaking business. Confidential Informant #1 also states that he has a close association with a professional bookmaker and that this associate advised him that he (the associate) "lays off" bets and gets "line" information from Howard Rubin and Jerome Cantor. Confidential Informant #1's associate told Confidential Informant #1 the telephone numbers he calls to place bets and get betting information; those numbers being 215 TU6–5999 and 215 TU6–1429. Also the close associate of Confidential Informant #1 told him (Confidential Informant #1) that he placed a bet with Harvey Berke on a sporting contest on April 7, 1969, at telephone number 215 TR6–5427.

The information supplied by Confidential Informant #2 recites that it was gained from personal knowledge and association with Howard Rubin, Harvey Berke and Al Massi. Although there are no facts or circumstances as to how the affiant concluded that Confidential Informant #2 was reliable, other than the statement that he was, his information corroborates the information of other confidential informants. Also Confidential Informant #2 states that one Al Massi gave him a phone number, HO5–9292, where he could place a bet with Massi. A check of telephone company records indicates that the number HO5–9292 is registered to A. T. Massi and is located at 6626 Roosevelt Avenue, Pennsauken, New Jersey, the home of Albert Massi.

The facts and circumstances supporting Confidential Informant #3's conclusion that Harvey Berke and "The Teacher" (Jerome Cantor) are engaged in bookmaking is from his personal knowledge. The basis for belief that Confidential Informant #3 is reliable is also set forth in the affidavit, i. e., his information has led to some 18 arrests by local authorities and at least 3 convictions for violation of federal gambling laws.

Confidential Informant #4 states that from personal knowledge he knows Howard Rubin and Harvey Berke to be bookmakers on sporting events. The basis for his conclusion is not set forth in the affidavit nor is the basis for his reliability. However, viewed as a part of the entire affidavit, his information is corroborative.

In the recent case of United States v. Singleton, 439 F.2d 381 (C.A. 3rd 1971), the Third Circuit had occasion to review the test to be applied in search warrant cases where a warrant is issued on the tip of an informant.

"Appellant argues that the affidavit is defective under the standards form-

ulated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In the earlier case, it was established that, where the authorities, in applying for a search warrant, rely completely upon the tip of an informant, there must be a sufficient disclosure of any underlying circumstances from which the informant concluded that the suspect was engaged in criminal conduct and from which the authorities concluded that the informant was credible or his information reliable, to enable the impartial magistrate to judge the validity of the informant's conclusion. Spinelli indicates that where the informer's tip is corroborated by other information, the magistrate must be satisfied that the information disclosed by the informant, coupled with the other information, is at least as trustworthy as the informer's tip would need be to stand alone under Aguilar."

■ Applying the *Aguilar* test to the information thus far, it appears that the affidavit does recite the facts and circumstance upon which Confidential Informants #1 and #3 concluded that Howard Rubin and Jerome Cantor were engaged in criminal conduct. The affidavit also discloses the facts and circumstances upon which the affiant concluded that Confidential Informants #1 and #3 were reliable. The *Spinelli* case says, inter alia, that where there is corroborative evidence, the *Aguilar* tests must still be applied to the informant's tip. Looking at the affidavit only with respect to the information given by the confidential informants, I conclude that the information given by informants #1 and #3 meets the tests set forth in *Aguilar* and *Spinelli*; and even though the affidavit does not recite the necessary information with respect to informants #2 and #4 to meet *Aguilar* and *Spinelli* tests, their information was merely corroborative.

■ The *Aguilar* and *Spinelli* cases were dealing with information from only one confidential source. In this case we are dealing with four confidential sources. Logic dictates that the aforementioned tests should be applied to each source, and if any withstand the test, then this court must look to the information provided by that source alone to determine if it, together with surveillance information, supports a finding of probable cause.

Independent investigation and surveillance determined that telephone numbers given to Confidential Informant #1 (215 TU6-5999 and 215 TU6-1429) are registered to Elliott Dorfman and Alan Rubin respectively at Apartment A-6, 1575 Edgehill Road, Abington, Pennsylvania. . Howard Rubin and Jerome Cantor were personally observed entering and leaving the building at 1575 Edgehill Road, Abington, Pennsylvania, on numerous occasions (See Affidavit, pp. 11–18).

The affidavit further states that pursuant to an authorized wire tap in New Jersey certain calls from New Jersey were placed to 215 TU6-5999 and 215 TU6-1429, the gist of these conversations indicated wagering on sporting events. (See p. 10 of the affidavit.) Taking the aforementioned surveillance information and the information supplied by informants #1 and #3, I find that there is an adequate basis for finding probable cause to believe that Howard Rubin, Jerome Cantor, Harvey Berke and others were engaged in interstate gambling on national sports.

At the hearing it was learned that Confidential Informants #3 and #4 were not the informants of the affiant. (Apparently agents of the FBI personally handle specific informants, from whom they regularly get information. Also, apparently these informants do not discuss their information with other FBI agents. However, all such information is circulated among other FBI agents.) I do not see to what extent this is relevant because the facts and circumstances surrounding the informant's belief are set forth as are the facts and circum-

stance upon which the affiant believed Confidential Informant #3 and #4 to be reliable (Agent Hegarty said he knew Confidential Informant #3 personally and knew him personally to be reliable but that he was handled by another agent in the department.).

Defendants argue that all of the information in the affidavit was stale in that it was given some time, about 2–3 months prior to the application. In making this argument, defendants ask the court to take judicial notice of the fact that a bookmaker frequently moves his base of operations. I decline to make such a finding in the face of the fact that the information in the affidavit leads to the conclusion that the various defendants had been operating continuously from this location for some time and there was no evidence from anyone ·that these individuals had recently moved or were likely to move.

Viewed in its entirety, I find that the affidavit on its face meets all the tests and safeguards required for a finding of probable cause and it does in fact support an independent conclusion that there is probable cause to believe that Rubin, Cantor, Berke and others were committing a crime in violation of Section 1084, title 18 U.S.C.A. 1084.

As aforementioned, defendants were given ample opportunity to cross-examine the affiant on almost every word of the affidavit. This evidence was permitted out of an abundance of caution even though defendants did not support with any facts or evidence their allegations that the affidavit was knowingly false or misleading. After three days of cross-examination of FBI Special Agent Hegarty (the affiant), I conclude that his testimony only strengthens the verity of the affidavit. The affidavit certainly supports a probable cause to believe that gambling information is being communicated interstate by the individuals using telephone numbers 215 TU6–5999 and 215 TU6–1429. The telephone listing and the surveillance information support

a finding of probable cause to believe that Howard Rubin and Jerome Cantor were using the telephones at 1517 Edgehill Road to carry on an interstate bookmaking business on national sports.

## COMPLIANCE WITH THE STATUTE

A reading of the wire tap order issued by Chief Judge John Lord, Jr., proves that it is in compliance with the requirements of title 18, Section 2518(4) (1968).

Defendants object to the fact that the inventories required by title 18, U.S.C.A. 2518(8) (d) (1968) were not served within the 90 day period. The inventories were served shortly after that period had elapsed and Chief Judge John Lord, Jr., did sign an order extending the time for serving the inventories as provided for in the above cited section, and no defendant was thereby prejudiced.

Counsel have attacked the constitutionality of Title III of the Omnibus Criminal Control and Safe Streets Act of 1968, Title 18 U.S.C., § 2510 et seq. (1968), and in particular the sections dealing with wire taps. The thrust of this argument is that the statute is not sufficiently circumscribed to protect the rights of an individual as guaranteed by the 4th amendment.

In the case of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 the Supreme Court had occasion to review this area when it suppressed certain evidence obtained by electronic surveillance.

"Accepting this account of the Government's actions as accurate, it is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it was to proceed, and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, with appropriate safe-

guards, the very limited search and seizure that the Government asserts in fact took place. Only last Term we sustained the validity of such an authorization, holding that, under sufficiently 'precise and discriminate circumstances,' a federal court may empower government agents to employ a concealed electronic device 'for the narrow and particularized purpose of ascertaining the truth of the * * * allegations' of a 'detailed factual affidavit alleging the commission of a specific criminal offense.' Osborn v. United States, 385 U.S. 323, 329–330, 87 S.Ct. 429, 17 L.Ed.2d 394. Discussing that holding, the Court in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040, said that 'the order authorizing the use of the electronic device' in Osborn 'afforded similar protections to those * * * of conventional warrants authorizing the seizure of tangible evidence.' Through those protections, 'no greater invasion of privacy was permitted than was necessary under the circumstances.' Id., at 57, 87 S.Ct. 1873.[16] Here too, a similar judicial order could have accommodated 'the legitimate needs of law enforcement'[17] by authorizing the carefully limited use of electronic surveillance." (Footnotes omitted.)

A reading of the statute in question convinces me that it is sufficiently circumscribed to comply with the reasoning in Katz and the guarantees of the 4th amendment. In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, the Supreme Court discussed among other things the standing of a co-defendant to object to a violation of the defendant's constitutional rights. In refusing to suppress wire tap evidence as to the co-defendant, the court tacitly, if not specifically, upheld the constitutionality of this Act.

"In this respect we are mindful that there is now a comprehensive statute making unauthorized electronic surveillance a serious crime.[8] The general rule under the statute is that official eavesdropping and wiretapping are permitted only with probable cause and a warrant. Without experience showing the contrary, we should not assume that this new statute will be cavalierly disregarded or will not be enforced against transgressors."

For the above set forth reasons, defendants motion to suppress the evidence obtained pursuant to the wire tap order of Chief Judge John Lord, Jr., is denied.

## MOTION TO SUPPRESS EVIDENCE FROM 2ND FLOOR OF 1205 LOCUST STREET

Defendants, Abe and Stanley Glassman, have moved to suppress certain evidence seized pursuant to search of the second floor apartment above the premises at 1205 Locust Street, Philadelphia, Pennsylvania. It is argued that the warrant authorizing the search of the premises at 1205 Locust Street, Philadelphia, Pennsylvania, extended only to the first floor and thus a search of the second floor was illegal. At the hearing on this matter the government offered evidence that Stanley Glassman gave a verbal consent to the search of the upstairs apartment. Defendant Stanley Glassman offered no evidence to refute this testimony. Defendant Stanley Glassman alleges that he does not own or occupy the upstairs apartment—and, therefore, could not give consent. Under the circumstance, it is difficult to see how he would have standing to object to the search and seizure conducted in the upstairs apartments. Alderman v. United States, supra, at p. 171 and pp. 176–177, 89 S.Ct. at p. 965 and pp. 968–969; Jones v. United States, 362 U.S. 257, p. 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

In any event, entry to the upstairs portion of the premises was obtained by using a key, which had been previously given to the FBI agents conducting the search, by Stanley Glassman. For these reasons, I find that the property obtained by a search of the upstairs apartments

at 1205 Locust Street, Philadelphia, Pennsylvania, was not illegally seized. Defendants' motion to suppress that evidence is hereby denied.

### ALIASES

Some defendants have objected to the use of an alias in the indictment although this was not raised by motion.

The matter can easily be taken care of at trial, by striking ·the aliases from the indictment if the aliases are not material as shown by the evidence. A re-typed copy of the indictment with the aliases so deleted could be permitted to go out to the jury during its deliberations, if any improper prejudice might otherwise arise.

### EXHIBIT #1

### MOTIONS FILED BY THE RESPECTIVE DEFENDANTS

1. Jerome Cantor and Howard Rubin
   a. Motion for Production and Inspection of all matters falling within the purview of 18 U.S.C.A. 2510, et seq.
   b. Motion for Discovery
   c. Motion to Suppress Evidence
   d. Motion to Dismiss
   e. Motion for Relief from Prejudicial Joinder
   f. Motion for Bill of Particulars

2. Harvey Berke
   a. Motion for Production of Grand Jury Minutes
   b. Motion to Dismiss Indictment
   c. Motion for Severance
   d. Motion for Discovery & Inspection
   e. Motion for Bill of Particulars
   f. Motion to Suppress Wire Tap Evidence

3. Anthony Trerotola
   a. Motion for Bill of Particulars
   b. Motion to Dismiss

   c. Motion for Severance and Transfer

4. Jack Isadore Kootchick
   a. Motion to Dismiss Indictment
   b. Petition to Suppress Evidence
   c. Motion for Severance
   d. Motion for Bill of Particulars
   e. Motion for Discovery and Inspection

5. Anthony Coletta
   a. Motion for Discovery and Inspection
   b. Motion to Dismiss Indictment
   c. Motion for a Bill of Particulars
   d. Motion for Severance
   e. Motion to Suppress Wire Tap Evidence

6. John Pendino
   a. Motion for Discovery and Inspection
   b. Motion for Bill of Particulars
   c. Motion for Severance
   d. Motion to Dismiss Indictment
   e. Motion to Suppress Wire Tap Evidence

7. Harold Friedman
   a. Motion for Bill of Particulars
   b. Motion to Dismiss Indictment
   c. Motion for Severance
   d. Motion for Discovery and Inspection

8. Herman Miller·
   a. Motion for Bill of Particulars
   b. Motion to Produce Statements and Testimony
   c. Motion to Produce Records and Statements of Witnesses
   d. Motion for Discovery and Inspection
   e. Motion to Inspect Grand Jury Minutes
   f. Motion to Dismiss
   g. Motion for Severance

h. Motion to Suppress Wire Tap Evidence

i. Motion to Inspect Wire Tap Tapes and Logs

9. Albert Wolf and Joseph Ianoale
   a. Motion for Production and Inspection
   b. Motion to Suppress Evidence
   c. Motion to Dismiss
   d. Motion for Discovery
   e. Motion for Relief from Prejudicial Joinder
   f. Motion for Bill of Particulars

10. Abraham and Stanley Glassman
   a. Motion for Bill of Particulars
   b. Motion for Discovery and Inspection
   c. Motion to Dismiss
   d. Motion for Severance
   e. Motion to Suppress Evidence

11. Albert Peter Massi, Sr.
   No motion filed

12. Joseph Patrick Ripka
   No motions filed

13. Nathan Rothman
   a. Motion for Discovery and Inspection
   b. Motion for Bill of Particulars
   c. Motion to Dismiss
   d. Motion for Severance

14. Nicholas Cappuccio
   a. Motion to Suppress and Return Evidence
   b. Motion for Discovery and Inspection
   c. Motion to Dismiss

15. Blase Salvatore
   a. Motion for Production of Grand Jury Minutes
   b. Motion to Dismiss Indictment
   c. Motion for Discovery and Inspection
   d. Motion for Severance
   e. Motion for Bill of Particulars