**UNITED STATES of America**

v.

**William Paul KOHNE et al.**

**Crim. No. 71-254.**

United States District Court,
W. D. Pennsylvania.

Aug. 25, 1972.

Samuel J. Orr, III, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

James A. Ashton, Pittsburgh, Pa., for defendants, William Paul Kohne, Patrick Denham, and Jeanine Denham.

Martin M. Sheinman, Pittsburgh, Pa., for defendants, Jeanne Kosh, Patsy Stanizzo and Betty Howden Stanizzo.

Ray Radakovich, Pittsburgh, Pa., for defendant, Joseph Tabella.

P. J. McArdle, McArdle & Mansmann, Pittsburgh, Pa., for defendant, James Quay.

James R. Fitzgerald, Pittsburgh, Pa., for defendant, Paul Patrick Woods.

Gilbert M. Gerber, Pittsburgh, Pa., for defendant, Frank DeLucia.

## OPINION AND ORDER

MARSH, Chief Judge.

The defendants in this case have been charged in a two-count indictment with conspiring to violate 18 U.S.C. § 1955 in violation of 18 U.S.C. § 371 (Count One) and with the substantive violation, and aiding and abetting the substantive violation, of 18 U.S.C. § 1955 (Count Two). A large portion of the government's evidence against these defendants has apparently been derived from court-authorized wiretaps installed upon certain telephones under the authority of 18 U. S.C. §§ 2510–2520.

The defendants have filed numerous motions;[1] an evidentiary hearing was held, and at this hearing and by orders issued afterwards many motions were ruled upon and disposed of. This memorandum is to dispose of defendants' motions aimed at suppressing evidence and dismissing the indictment.

With the exception of the motions of defendants Patsy Stanizzo and Betty Howden Stanizzo the motions to suppress evidence are aimed at the constitutionality, validity and purity of the procedures utilized by the government in this case in installing and gathering evidence against these defendants via court-authorized wiretaps. The following points have been raised by the defendants which merit some discussion:[2]

1. The statute authorizing interception of telephone communications, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, 2520 is unconstitutional.

2. The applications for the court orders authorizing interceptions of telephone communications were not properly authorized.

3. Toll records of the telephone company were illegally obtained by the United States Attorney's Office and used in the applications for court orders authorizing interceptions.

4. The court orders authorizing interceptions were not based upon probable cause.

5. The search of the residence of Patsy Stanizzo and Betty Howden Stanizzo was not based upon probable cause, and certain monies seized in that search should be returned.

In addition, the defendants have moved to dismiss the indictment asserting:

6. The illegal gambling businesses statute, 18 U.S.C. § 1955, is unconstitutional.

7. The conspiracy count represents a duplication of the substantive offense set out in 18 U.S.C. § 1955 and should be dismissed.

### 1. Constitutionality of 18 U.S.C. §§ 2510–2520.

The constitutionality of the provisions of 18 U.S.C. §§ 2510–2520, which authorize the interception of private telephone communications upon a showing of probable cause are currently before numerous Circuit Courts, and the defendants have not put great emphasis on this point in their briefs.

■ The standards for testing the constitutionality of a wiretap statute are set forth in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); and Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d

---

1. The docket entries in this case reveal that 29 substantive motions have been filed by defendants to-date.

2. A comparison of the points raised here with those raised in United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa.1972), shows that many points raised in this case have already been disposed of by Judge Weis in his Iannelli opinion.

394 (1966). Nothing said in the defendants' skeletal briefs on this issue has convinced us that the provisions of 18 U.S.C. §§ 2510–2520 do not meet these standards or that they are, *per se,* outside the parameters of the constitutional guarantees protecting the privacy of individuals. The majority of cases passing on this issue have held that the provisions of 18 U.S.C. §§ 2510–2520, as written by Congress, are constitutional. United States v. Cox, 449 F.2d 679 (10th Cir. 1971); United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa.1971); United States v. King, 335 F.Supp. 523 (S.D. Cal.1971); United States v. Perillo, 333 F.Supp. 914 (D.C.Del.1971); United States v. Leta, 332 F.Supp. 1357 (M.D. Pa.1971); United States v. Scott, 331 F.Supp. 233 (D.C.D.C.1971); United States v. Cantor, 328 F.Supp. 561 (E.D. Pa.1971); United States v. Sklaroff, 323 F.Supp. 296 (S.D.Fla.1971); *contra,* United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972). We follow the majority and hold 18 U.S.C. §§ 2510–2520 to be constitutional.

### 2. Authorization for Wiretaps.

The defendants complain that the wiretaps were not properly authorized as required by 18 U.S.C. § 2516(1) which provides:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications * * *."

Initially, to clarify this issue, the government filed the affidavits of Sol Lindenbaum and Henry E. Petersen. Sol Lindenbaum's affidavit avers that Attorney General Mitchell personally initialed the memoranda on February 1, March 3, March 24, and May 6, 1971, authorizing Will Wilson to exercise the powers conferred on the Attorney General under 18 U.S.C. § 2516(1). Henry E. Petersen's affidavit shows that following approval in the office of the Attorney General, he, rather than Will Wilson, signed Will Wilson's name to letters authorizing Kenneth A. Bravo to present applications to this court requesting approval of the wiretaps involved in this case.

At the evidentiary hearing Attorney Ashton cast a cloud over the accuracy of the Lindenbaum affidavit by producing a memorandum from the case of United States v. LaGorga, supra, 336 F.Supp. p. 195, purportedly initialed by Attorney General Mitchell, but which, when compared with the memoranda in this case, showed distinctly different handwriting on the two memoranda. This court indicated that it was inclined to allow the defendants to depose the former Attorney General to determine if he had, in fact, initialed both memoranda. The government then brought to the attention of the court that certain of the memoranda in the *LaGorga* case had not been personally signed by Attorney General Mitchell.[3] To dispel any confusion that existed concerning who authorized and initialed the memoranda in this case, the defendants were given permission to depose former Attorney General Mitchell by way of written interrogatories. The defendants submitted written interrogatories. Mr. Mitchell did not answer these interrogatories but instead presented an affidavit which established to the satisfaction of the court that the memoranda in this case were initialed by Attorney General Mitchell personally.[4]

3. As a result of this admission by the government, Judge Weis ordered that certain wiretap evidence be suppressed in the case of United States v. LaGorga, supra. (See amended order entered April 12, 1972, United States v. LaGorga, 340 F. Supp. 1397 (W.D.Pa.1972).) The government has taken an appeal from this order.

4. One of the defendants, William Kohne, has moved to dismiss the indictment

We are faced with a split of authority concerning the validity of the authorization which occurred in this case. Two district courts have recently indicated that such memoranda would be insufficient to comply with § 2516(1). See: United States v. Casale, 341 F. Supp. 374 (M.D.Pa.1972); United States v. Focarile, 340 F.Supp. 1033 (D.C.Md. 1972). But, the majority of the courts passing on the issue have concluded that a memorandum personally initialed by the Attorney General meets the requirements of 18 U.S.C. § 2516(1). United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972); United States v. Consiglio, 342 F.Supp. 556 (D.C.Conn. 1972); United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga.1972); United States v. D'Amato, 340 F.Supp. 1020 (E.D.Pa.1972); United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa.1972); United States v. Aquino, 336 F.Supp. 737 (E.D.Mich.1972); United States v. Cantor, 328 F.Supp. 561 (E.D.Pa. 1971); United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa.1971). Here, Attorney General Mitchell personally authorized this wiretap and, therefore, authorization can be traced to a publicly responsible official, subject to political process. Cf. United States v. Robinson, 468 F.2d 189 (5th Cir. 1972); United States v. Narducci, 341 F.Supp. 1107 (E.D.Pa.1972). We hold that on the facts presented in this case, the wiretaps were properly authorized; to hold otherwise would be to put form over substance and would negate the countless hours spent by law enforcement officials gathering evidence for this case. If the statute is constitutional, a request for authorization which has been personally reviewed and granted by the Attorney General complies with requirements of 18 U.S.C. § 2516, even if it incorrectly appears on the court records that Will Wilson was the authorizing officer.

### 3. The Telephone Toll Records.

The affidavits supporting the wiretap authorizations show that certain telephone company toll records were in the hands of government authorities at the time the affidavits were prepared. Defendants contend that these records were illegally obtained by the government.

At the evidentiary hearing, the government represented to the court that the disputed toll records were obtained by Grand Jury subpoena, but could not verify if the records were in fact ever presented to a Grand Jury or used for any other reason except to facilitate the government's investigation. The government was ordered to inform the court if these records were ever presented to the Grand Jury (Tr., p. 304). In response to this order, the court was supplied with a memorandum from the office of the United States Attorney for the Western District of Pennsylvania entitled "Obtaining Telephone Toll Slips from the Bell Telephone Company of Western Pennsylvania et al." and copies of subpoenas for the toll records involved in this case. The procedure outlined in this memorandum is as follows:

The investigating officer makes known to the United States Attorney's office the telephone numbers for which toll slips are desired, and that office prepares a subpoena duces tecum ordering the appropriate telephone company official to appear with these records before the next Grand Jury; this subpoena is served by the Marshal. Rather than waiting for the next Grand Jury, the telephone company immediately supplies the requested information to the United States Attorney's office, which then turns the information over to the officer requesting it. The last paragraph of the memorandum provides:

"The main purpose in devising the above procedure is to regularize the

---

against him on the basis that the government failed to satisfactorily answer the written interrogatories submitted to

former Attorney General Mitchell. A decision on this motion is pending.

obtaining of toll slips so that any doubt about the propriety of such action be removed. In other words, the subpoena to the grand jury of telephone toll slips will be handled henceforth in the same way as the subpoena of any other books, records, etc., and, it is recognized, the telephone company has the right at any time to refuse to divulge these records except to the grand jury per the terms of the subpoena. *The above procedure has been approved by the telephone company as a means of accommodation to federal investigative efforts.*" (Emphasis supplied.)

According to this memorandum the telephone company realizes when it produces these records that it is not legally bound to do so; that it can wait until the next Grand Jury; and that if it produces the records to the United States Attorney's office instead of the next Grand Jury, it is doing so voluntarily. Of course, since these assertions are contained in a unilateral and unverified memorandum, it would require the taking of further evidence before a decision could be based on these grounds, but for the following reasons we believe the taking of further evidence to be unnecessary.

■ First, contrary to the defendants' contentions, these toll records are not covered by the Federal Communications Act of 1934, 47 U.S.C. § 605, as amended, Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351 (June 19, 1968). While some courts have assumed, without deciding, that toll records are covered by § 605 and, therefore, producible only "in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority", Nolan v. United States, 423 F.2d 1031 (10th Cir. 1969); DiPiazza v. United States, 415 F.2d 99

(6th Cir. 1969), we believe the correct view is expressed in United States v. Covello, 410 F.2d 536 (2d Cir. 1969), where it was held at page 542:

" * * * [T]he keeping of toll records is a necessary part of the ordinary course of the telephone company's business and is necessary in order that the company may substantiate its charges to its customers. Toll records are kept for all telephone subscribers and are not kept just for subscribers being investigated by officers of the law, or ones suspected of criminal proclivities. The subscriber is fully aware that such records will be made, United States v. Gallo, 123 F.2d 229, 231 (2 Cir. 1941), and the records of the telephone company so kept in the ordinary course of the company's business are entitled to the same evidentiary treatment as the records of other businesses. See Federal Business Records Act, 28 U.S.C. § 1732 (1964). Section 605 was not designed to render evidentially inadmissible the records made in the ordinary course of the telephone company's business and which are essential to the ordinary operation of that business."

The defendants have no proprietary interest in records kept by the telephone company reflecting transactions occurring between the defendants and the company. *Cf.* Donaldson v. United States, 400 U.S. 517, 523, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970). Therefore, even if further evidence was taken, and it was found that the manner in which these records were obtained by the government was an abuse of process amounting to an illegal search and seizure,[5] any search which occurred was directed against the telephone company and not these defendants, and what the

---

5. See: Durbin v. United States, 94 U.S. App.D.C. 415, 221 F.2d 520 (1954). Cf. In Re Aviation Industry, 183 F.Supp. 374 (S.D.N.Y.1960). For other cases dealing with the use of a subpoena duces tecum by the United States Attorney's office, see: Martin v. Beto, 397 F.2d 741 (5th Cir. 1968); United States v. Aronson, 319 F.2d 48 (2d Cir. 1963); United States v. Re, 313 F.Supp. 442 (S.D.N.Y.1970); In Re Dymo Industries, Inc., 300 F.Supp. 532 (N.D.Cal.1969); United States v. Morton Salt Company, 216 F.Supp. 250 (D.C.Minn.1962). The

Supreme Court said in Alderman v. United States (1968), 394 U.S. 165, at page 174, 89 S.Ct. 961, at page 967, 22 L.Ed.2d 176, would be applicable here:

"What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.

" * * * [W]e are not convinced that the additional benefits of extending the exclusionary rule * * * would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth."

We conclude that since these records were telephone company records, the defendants have no standing to complain of the manner in which the government acquired access to them or to their use in establishing probable cause for the court authorized wiretaps.[6] *Cf.* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Boyle v. United States, 395 F.2d 413 (9th Cir. 1968); Dryden v. United States, 391 F.2d 214 (5th Cir. 1968); Hill v. United States, 374 F.2d 871 (9th Cir. 1967); United States v. Re, 372 F.2d 641, 644 (2d Cir. 1967).

### 4. *Probable Cause.*

■ The wiretaps involved in this case were authorized by three separate applications to the court (Misc. Nos. 5127, 5147, and 5191), each containing the affidavit of Special Agent Robert L. Burton; these three affidavits run for a total of 68 pages. We have reviewed the affidavits and conclude that, contrary to defendants' contentions, they are sufficient to establish probable cause for the issuance of interception orders as to all defendants named in this indictment.

The affidavits in this case are based upon three sources of information: (1) toll slips, (2) other wiretaps, and (3) confidential informants. We have already decided that the defendants do not have standing to object to the use of the toll slip information and nothing appears on this record which shows that information discovered by the use of prior wiretaps was tainted or objectionable as far as these defendants are concerned. See: Alderman v. United States, *supra.* As to the confidential informants, the affidavits indicate why the informants are credible and the information supplied reliable, and further set forth the underlying circumstances necessary to enable the judge authorizing the wiretap to pass on the validity of the informants' conclusions and to find a substantial basis for crediting the informants' information. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968). The affidavits in this case contain ample information to allow a finding of probable cause.

### 5. *Search of the Stanizzo Residence.*

Patsy Stanizzo and Betty Howden Stanizzo have moved to suppress as evidence and return to them certain items seized from their residence by F.B.I. agents on July 12, 1971. They contend that while the officers were armed with

---

problem apparently is one for disciplinary action by the court and not one entitling a defendant to suppress evidence. United States v. Procario, 356 F.2d 614, 618 (2d Cir. 1966).

6. While we have decided that these records were not covered by 47 U.S.C.

§ 605, even if they were, the defendants still might not be entitled to have this evidence suppressed. See: Goldstein v. United States, 316 U.S. 114, 122, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942).

a search warrant, the affidavit for the search warrant does not set forth probable cause because it is based upon facts occurring long prior to the search, and further that $1900 in cash seized by the officers was not such an integral part of any gambling operation so as to be of evidential value at trial, and, accordingly, should be returned to them.

██ The search warrant for the Stanizzo residence was issued on July 11, 1971, and executed on July 12, 1971. Five pages of the fifty-one page affidavit of Special Agent Burton set out the probable cause for the issuance of a search warrant for the Stanizzo residence. This portion of the affidavit shows that there was probable cause to believe that the Stanizzos operated a gambling business from June, 1970, to May, 1971, and it also sets out that as recently as July 8, 1971, a confidential informant verified that by reason of his personal gambling activities he knew that the Stanizzos continued to operate a gambling business. In our view, the information supplied by the confidential informant updated the earlier information and the affidavit sets out probable cause for the issuance of the search warrant on July 11, 1971. *Cf.* United States v. Harris, *supra*.

Defendants also contend that $1900 in cash seized from a bedroom dresser should be returned to them because there is no evidence showing it was an integral part of a gambling business, citing Commonwealth v. Blythe, 178 Pa.Super. 575, 115 A.2d 906 (1955), a case involving a public Bingo game.

██ At the evidentiary hearing it was disclosed to the court that the Internal Revenue Service had filed a lien against this money (Tr., p. 236). Accordingly, a determination of whether this money should be returned to the Stanizzos, forfeited under 18 U.S.C. § 1955(d) or turned over to the Internal Revenue Service is premature at this time. The motion to return will be denied.

### 6. *Constitutionality of 18 U.S.C. § 1955.*

██ Defendants allege that the illegal gambling business statute, 18 U.S.C. § 1955, is unconstitutional. On May 9, 1972, after briefs had been submitted and oral argument had in this case, the Third Circuit Court of Appeals upheld the constitutionality of 18 U.S.C. § 1955 in the case of United States v. Riehl (Appeal of Rinaldi), 460 F.2d 454 (3d Cir. 1972). We hold defendants' contentions in this regard fail on the basis of the above cited decision.

### 7. *The Application of Wharton's Rule to the Indictment.*

In Count One of the indictment, defendants are charged with conspiring to violate 18 U.S.C. § 1955 and thereby violating 18 U.S.C. § 371, and in Count Two they are charged with actually conducting an illegal gambling business and thereby committing substantive violations of 18 U.S.C. § 1955. The defendants contend that a conviction on both counts cannot stand because it would be a duplication of punishment and, accordingly, count one, the conspiracy count, should be dismissed. Defendants rely on United States v. Greenberg, 334 F.Supp. 1092 (N.D.Ohio 1971).

These contentions are based on the definition of "illegal gambling business" found in § 1955:

"(1) 'illegal gambling business' means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) *involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and*

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." 18 U.S.C. § 1955(b). (Emphasis supplied.)

██ One of the purposes of the general conspiracy statute, 18 U.S.C. §

371, is to punish concerted action involving a plurality of actors which makes crime easier to perpetrate and harder to detect. United States v. Rabinowich, 238 U.S. 78, 88, 35 S.Ct. 682, 59 L.Ed. 1211 (1915). But, by virtue of the definition of illegal gambling business in § 1955, *supra,* it is a prerequisite that the concerted action of five *or more* persons be involved before a federal crime has been committed. It follows that if a substantive violation of § 1955 is proved, the same concerted action proving this violation cannot be used to automatically convict the defendants of conspiracy under 18 U.S.C. § 371 because, in this context, the conspiracy violation does not require proof of a fact which was not also essential to the proof of the § 1955 violation, i. e., there would be no additional element in the proof of the conspiracy to which the additional punishment could attach.[7] *Cf.* Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Beacon Brass Co., 344 U.S. 43, 45, 73 S.Ct. 77, 97 L.Ed. 61 (1952); American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); United States v. Noveck, 273 U.S. 202, 206, 47 S.Ct. 341, 71 L.Ed. 610 (1927); Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911).

▉ But, assuming the above to be correct, this does not mean that defendants are entitled to have the conspiracy count dismissed. The general conspiracy statute, 18 U.S.C. § 371, can punish conspiratorial conduct which does not amount to a substantive violation of 18 U.S.C. § 1955. As was said in United States v. Riehl (Appeal of Rinaldi), *supra,* 460 F.2d p. 460, in discussing a § 1955 gambling business:

"It seems clear that one may conspire to facilitate such a business * * *

and at the same time be so removed from its operation so as to fall outside the reach of § 1955."

Absent a clear legislative intent to the contrary, we believe that persons conspiring with the members of an established illegal gambling business as defined by 18 U.S.C. § 1955 and committing an overt act not amounting to a substantive violation of § 1955, but facilitating such a business or aimed at eventual criminal participation therein, can be held responsible under the general conspiracy statute, 18 U.S.C. § 371. *Cf.* Woods v. United States, 99 U.S.App. D.C. 351, 240 F.2d 37 (1956); Lisansky v. United States, 31 F.2d 846 (4th Cir. 1929); see: Annot., 91 A.L.R.2d 1148 (1963). Defendants' motions will be denied.

An appropriate order will be entered.

---

7. For cases discussing Wharton's rule see: Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Gebardi v. United States, 287 U.S. 112, 121–122, 53 S.Ct. 35, 77 L.Ed. 206 (1932); Baker v. United States, 393 F.2d 604 (9th Cir. 1968); Reno v. United

States, 317 F.2d 499, 503 (5th Cir. 1963); Pifer v. United States, 245 F.2d 704, 705 (4th Cir. 1957); United States v. Zeuli, 137 F.2d 845, 846 (2d Cir. 1943); United States v. Sager, 49 F.2d 725, 727 (2d Cir. 1931).