UNITED STATES of America
v.
Billy Cecil DOOLITTLE et al.
Crim. No. 8815.

United States District Court,
M. D. Georgia,
Macon Division.

Feb. 11, 1972.

---

William J. Schloth, U. S. Atty., Charles T. Erion, Asst. U. S. Atty., Macon, Ga., for plaintiff.

Floyd M. Buford, Manley F. Brown, Macon, Ga., Wesley R. Asinof, Atlanta, Ga., for defendants.

BOOTLE, Chief Judge:

ORDER OVERRULING AMENDED MOTION TO SUPPRESS EVIDENCE AND QUASHING SUBPOENA UPON THE ATTORNEY GENERAL OF THE UNITED STATES

By order dated December 17, 1971, after full hearing, this court overruled the defendants' motions to suppress and for return of evidence seized. Shortly after the rendition of the decision by the Court of Appeals for the Fifth Circuit in United States v. J. W. Robinson et al., [No. 71–1058, January 12, 1972], and on January 17, 1972, the defendants filed in this court their motion for reconsideration of said motion to suppress and to return the evidence and filed an amendment to said motion. On January 26, 1972, the Government filed its response to said amended motion.

Said amended motion raises specifically the contentions that the filing with this court of the application for an interception order was not properly authorized, and that the purported letter of authorization purportedly signed by Will Wilson, Assistant Attorney General, was not in fact signed by him but was in fact signed in Will Wilson's name by Henry E. Peterson, who was at that time a Deputy Assistant Attorney General in the Criminal Division. The Government's response to said amended motion admits that said letter was not signed by Will Wilson, and attaches for the record an affidavit from Sol Lindenbaum, an Executive Assistant to the Attorney General; and "Interception Order Authorization" in the form of a memorandum from John N. Mitchell, Attorney General, to Will Wilson, Assistant Attorney General, dated August 19, 1970, bearing the personal initials of Mr. Mitchell placed thereon by him; an affidavit of Henry E. Peterson, Assistant Attorney General, Criminal Division, and an affidavit by Will Wilson, Assistant Attorney General, together with a copy of a letter from Will Wilson, Assistant Attorney General, to William G. Earle, dated June 16, 1969. All of said attachments, of course, appear in the file. Mr. Lindenbaum's affidavit is brief and to the point, stating that he is an Executive Assistant to the Attorney General, and says:

"On August 19, 1970, the Attorney General approved a request for authority to apply for an interception order in this case. Attached is a copy of his personally initialed memorandum of that date reflecting his favorable action on the request."

The memorandum referred to is so important that a copy of it is attached hereto as "Exhibit A". It invites reading and rereading in its entirety. The affidavit by Henry E. Peterson, who, as above stated, was on the relevant dates a Deputy Assistant Attorney General in the Criminal Division, and who later became an Assistant Attorney General, describes the processing in the Criminal Division of the Department of Justice of the request for authorization to make the application to the court in this case. It shows that the formal request for authorization was made by the Director of the Federal Bureau of Investigation on August 17, 1970; that the entire file was reviewed in a special unit of the Organized Crime and Racketeering Section of the Criminal Division prior to action on the request; that two named attorneys of that unit reviewed the file and recommended favorable action on the request; that the file was then submitted for review to a named Deputy Chief of the Organized Crime and Racketeering Section, who recommended approval of the request and sent the file to Mr. Peterson who then examined the file and forwarded it to the office of the Attorney General with a recommendation that the authorization be granted and that "following approval in the Office of the

Attorney General, the Criminal Division dispatched the letter dated August 20, 1970, to Charles T. Erion, advising him that he was authorized to present the application to the court." Mr. Peterson's affidavit states further that he signed Will Wilson's name to the letter of August 20, 1970 in accordance with Mr. Wilson's authorization and the standard procedures of the Criminal Division; that he regarded the signing of Mr. Wilson's name as a ministerial act because Mr. Wilson had authorized him to sign his name to and dispatch such a letter of authorization in every instance in which a request had been favorably acted upon in the office of the Attorney General and that Mr. Wilson did not examine the file or expressly authorize the application.

Thereafter (on or shortly after February 7, 1972) the United States Attorney exhibited to counsel for movants an additional affidavit dated February 7, 1972, and filed in this court on February 10, 1972, said affidavit being made and signed by John N. Mitchell, Attorney General of the United States, and having attached to it the above mentioned memorandum of August 19, 1970. Mr. Mitchell's affidavit is important and is attached hereto as "Exhibit B". It, too, merits reading and rereading in its entirety. Forthwith after learning of Mr. Mitchell's affidavit counsel for movants caused to be issued for service upon Mr. Mitchell a subpoena requiring his attendance in this court at the hearing already scheduled for February 10, 1972 at 10 o'clock, A.M. Promptly, and on February 9, 1972, the United States Attorney, as soon as he learned of the issuance of said subpoena, filed a motion to quash the same upon the grounds that the testimony of Mr. Mitchell could add nothing further to the information contained in his affidavit and that cross-examination or direct examination of him by counsel for defendants could not elicit any additional information concerning any matter relevant to the issue to be determined by the court; that Mr. Mitchell's affidavit is merely a publication by an official of the Executive Branch of the Government of previously unpublished administrative procedures and regulations established by him pursuant to his power and authority and is therefore not a matter subject to cross-examination; that defendants have no absolute right to cross-examine persons giving evidence for the United States relative to the issues presented by the amended motion to suppress inasmuch as persons giving such evidence are not necessarily witnesses against defendants within the meaning of Amendment Six to the Constitution dealing with confrontation and that the subpoena is frivolous and has been caused to be issued for the principal purpose of harassing officials of the Department of Justice, including the highest prosecuting official of the United States of America and for further delaying the final determination of the issues presented by the indictment and pleas of not guilty.

This matter came on for hearing as scheduled on February 10, 1972, the court having previously announced to counsel on February 9, 1972 that the Attorney General would be excused from appearing at said hearing of February 10, 1972 on said date and that a decision on the motion to quash would be reserved pending the hearing.

At said hearing on February 10, 1972, counsel for movants filed their motion to strike Mr. Mitchell's affidavit, reciting the issuance of said subpoena, the filing of the motion to quash the same, and alleging the failure of Mr. Mitchell to appear and subject himself to cross-examination amounts to the denial of the guarantees of the Sixth Amendment as to the right of confrontation, and that accordingly said affidavit must be stricken unless and until the Government submits Mr. Mitchell to a thorough in person cross-examination by the defendants before this court.

■■ There emerge two major questions: first, whether the application to this court for the interception order was properly authorized under the applicable

statutes; and, second, should the subpoena issued for the Attorney General of the United States be quashed. The controlling enactment is Title 3 of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq., the purpose and philosophy of which are elucidated in United States v. Robinson, *supra.* Section 2516, in pertinent part, says:

> "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application . . . "

So the controlling question is whether this application was authorized either by the Attorney General or any Assistant Attorney General specially designated by the Attorney General for that purpose. In view of the holding in the *Robinson* case the Government can prevail on this motion only if the Attorney General himself authorized this application. Mr. Wilson, being an Assistant Attorney General, could properly have authorized the application if we assume that the initialed memorandum specially designated him for that purpose, but the evidence is clear that Mr. Wilson did not personally authorize the application and under *Robinson* Mr. Wilson's Deputy Assistant Attorney General, Mr. Peterson, could not authorize for him. Thus we must look to the evidence presently before this court to see whether or not Mr. Mitchell himself authorized the application. If the evidence consisted solely of the initialed memorandum of August 19, 1970 there may well be doubt. If we had to look to the memorandum alone we would see on the one hand, as pointed out so ably by counsel for defendants, that paragraph 1 simply states what the memorandum is about, namely, "your recommendation that authorization be given" and that the remaining short paragraph simply says: "Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing Charles T. Erion to make the above-described application." Cer-

tainly this memorandum could have been better worded to show final approval by Mr. Mitchell. The memorandum, standing alone, may leave some question as to whether its purpose was to express authorization by Mr. Mitchell, or simply to confer upon Mr. Wilson full powers to pass upon the application.

On the other hand, as Government counsel forcefully point out, the entitlement of the memorandum is "Interception Order Authorization" (not interception order request). Then too, the opening line of paragraph 1 shows that there had not been a recommendation for delegation of authority but a "recommendation that authorization be given" (not a recommendation that Wilson be specially designated for the purpose). Additionally, the Attorney General specially designates Wilson to exercise those powers "for the purpose of authorizing Charles T. Erion to make the above-described application" (not for the purpose of passing upon the application).

Of course, the question before this court is not whether the memorandum used the best language possible to express authorization by the Attorney General, but whether in fact such authorization was given. The affidavit of the Attorney General states unequivocally "on August 19, 1970 [the date of the memorandum] I approved a request for authority to apply for an interception order in this case. Attached is a copy of my personally initialed memorandum of that date reflecting my favorable action on the request.". Mr. Mitchell deposes further that his action in approving the request in the manner in which he approved it was in accordance with a procedure which he established for handling such requests; that his memorandum of approval constituted a notification to Mr. Wilson that the discretionary action of approving the request to make application to the court for an interception order was taken by Mr. Mitchell and that his memorandum in reciting that Mr. Wilson was specially designated to authorize the application and dispatch the letter "were merely the procedure

adopted for transmission of my authorization in this case." The Attorney General's affidavit is supported in effect by the previously mentioned affidavits of Sol Lindenbaum and Henry E. Peterson and these affidavits are not at all inconsistent with the memorandum itself, serving only to explain whatever ambiguity may lie in the memorandum.

█ This court is of the opinion that all of these affidavits, as well as the memorandum itself and the letter of authorization attached to the application are properly in evidence to be considered by the court on the pending motions.

A case of some help is In re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631 (1962), construing a provision of the Immunity Act of 1954, 18 U.S.C. § 3486, which provided in substance:

> "Whenever in the judgment of a United States Attorney the testimony of a witness . . . in any case or proceeding before any grand jury or court of the United States involving any interference with or endangering of . . . the national security or defense of the United States . . . is necessary to the public interest, he, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify . . . . ."

The court pointed out that the application to the court under the Immunity Act must show first that in the judgment of the United States Attorney the application was necessary to the public interest, and, second, that there was the "approval of the Attorney General", and, third, that there was a proceeding "involving . . . interference with or endangering of . . . the national security or defense of the United States." The court held that the first two limitations did not address themselves to the Judiciary except to the extent that the court should satisfy itself that the United States Attorney held the required opinion and that the application was being made upon the approval of the Attorney General. The court held

further that "The application should say, explicitly, that such is the opinion of the United States Attorney and show the Attorney General's concurrence,[12]

[12]. The procedure followed here and in Ullman, i. e., attaching to the application the Attorney General's letter approving invocation of the statute in the particular case, is clearly proper.

but, having stated their conclusion, the government's attorneys need not justify it. The court cannot review their judgment in this regard." With respect to limitation three, the court held that in this particular it is the judge not the Government's attorney who makes the judgment and that he cannot decide except on the basis of facts presented. Significantly, the court concluded that while a witness who is offered immunity and is sought to be forced to testify must be given an opportunity to be heard, "the full panoply of trial is not appropriate . . . . Just as in the case of applications for temporary injunctions, there will usually be no occasion for live testimony in support of the application."

█ As indicated by footnote 12, quoted from the *Bart* case, the court specifically approved attaching to the application the Attorney General's letter approving invocation of the statute as the proper method for proving to the court's satisfaction that the Attorney General had approved or had granted his approval. If a letter from the Attorney General can establish such approval *a fortiori* his affidavit can serve the same purpose. Under the authority of Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753, this court does not see the Attorney General as a witness against the defendants within the meaning of the Sixth Amendment. The affidavit of the Attorney General in no way relates to facts concerning the defendants' guilt or innocence. As pointed out in *Dowdell*, the right of confrontation has always had certain well recognized exceptions; for instance, testimony of deceased witnesses of which the accused has had the right to cross-exam-

ination in a former trial and dying declarations although not made in the presence of the accused, and *Dowdell* said further that documentary evidence to establish collateral facts admissible under the common law may be admitted in evidence.

The requirement of § 2516(1) is simply that the Attorney General "authorize an application". The method and manner of his authorizing is not prescribed. Presumably, it ought to be in writing although the statute does not so require. The affidavits referred to unequivocally aver his authorization. Those affidavits, considering their source, sufficiently convince this court that this application was properly authorized by the Attorney General in person.

■ Not overlooked is defendants' contention that the application to this court was defective in that it depicted Will Wilson as the man who granted the required authorization rather than the Attorney General himself, the requirement of § 2518(1) being that the application shall state the applicant's authority to make such application and the identity of the investigative or law enforcement officer making the application, and the official authorizing the application. The essential requirement of these statutes is that the application be authorized by the Attorney General or by a specially designated Assistant Attorney General. The variance between the *allegata* and *probata* in this regard is deemed immaterial under the facts of this case.

■ There remains the question of whether the subpoena for the personal appearance of the Attorney General of the United States should be quashed. This court thinks it should. The only possible relevance of any testimony this Cabinet Officer could give would be with respect to whether or not he personally authorized the Assistant United States Attorney, Mr. Erion, to make application to this court for the wire inter-

ception order. By affidavit presently before this court he deposed at length that he did and exactly how he did it, furnishing to this court his personally initialed memorandum showing his personal handling of the matter. In the case of United States v. Morgan, 313 U. S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429, 1435, the Secretary of Agriculture had been required to depose at length in reference to his order fixing maximum rates for stockyards' marketing agencies and the Supreme Court said: "But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' (Citation omitted). Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary.' (Citation omitted). Just as a judge cannot be subjected to such a scrutiny, (citation omitted) so the integrity of the administrative process must be equally respected. (Citation omitted). It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other."

Finally, we cite United States v. Cantor, 328 F.Supp. 561 (E.D.Pa.1971) in which the court, in determining whether or not a similar application for a wire interception order under the same statutes has been properly authorized, said:

"Based on those letters, I find that the application was authorized in conformity with the above section of the statute. It would seem entirely unnecessary and inappropriate to require at such a hearing direct oral testimony from the Attorney General of the United States and Mr. Will Wilson

that the application to Chief Judge Lord for a wire-tap order was authorized."

Accordingly, the motion to suppress evidence and for the return of property, as amended, is hereby overruled and the subpoena issued at the issuance of the defendants for the personal appearance in this court of the Attorney General of the United States is hereby quashed.

## EXHIBIT A

| | |
|---|---|
| UNITED STATES GOVERNMENT | DEPARTMENT OF JUSTICE |

MEMORANDUM

TO       :   Will Wilson
                 Assistant Attorney General
                 Criminal Division

FROM   :   John N. Mitchell
                 Attorney General

DATE:  Aug. 19, 1970

JNM:DEH:lrt

SUBJECT:   Interception Order Authorization

———◆———

This is with regard to your recommendation that authorization be given to Charles T. Erion, Assistant United States Attorney, Middle District of Georgia, to make application for an interception order under 18 U.S.C. 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephone numbers 912–746–9110, 912–745–2843, 912–746–2844, and 912–745–2845, listed to the Sportsman's Club, 222 Third Street, Macon, Georgia, in connection with the investigation into possible violations of 18 U. S.C. 1084, 1952, and 371, by Billy C. Doolittle and others as yet unknown.

Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing Charles T. Erion to make the above-described application.

## EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>BILLY CECIL DOOLITTLE, et al. | Cr. No. 8815 |

———◆———

AFFIDAVIT

District of Columbia:

John N. Mitchell, being duly sworn, deposes and says:

I am the Attorney General of the United States and have been since January 1969.

On August 19, 1970, I approved a request for authority to apply for an interception order in this case. Attached is a copy of my personally initialed memorandum of that date reflecting my favorable action on the request.

My action in approving the request for an interception order in this case

was in accordance with a procedure which I established whereby after review and favorable recommendation by the Criminal Division all such requests would be submitted to me for approval, or in circumstances when I was unavailable, to my Executive Assistant pursuant to authorization I had given him to act in such circumstances.

My memorandum of approval in this case constituted a notification to the Assistant Attorney General of the Criminal Division that the discretionary action of approving the request to make application to the court for an interception order was taken by me.

My memorandum of approval in this case which recited that Assistant Attorney General Will Wilson was specially designated to authorize the application and the dispatch of the letter dated August 20, 1970, in the name of Will Wilson to the applicant, Charles T. Erion, were merely the procedure adopted for transmission of my authorization in this case.

/s/ JOHN N. MITCHELL
Attorney General of the United States

Subscribed and sworn to before me this 7th day of February, 1972.

(s)     Audrey Ann Crump

My Commission Expires August 31, 1976