**UNITED STATES of America,**

v.

**Jerome CANTOR et al.**

**Crim. No. 70–454.**

United States District Court, E. D. Pennsylvania.

March 20, 1972.

---

Robert Simone, Philadelphia, Pa., for Cantor on the issue of the legality of the wiretap only.

Jerome Cantor pro se.

Stephen Stein, Philadelphia, Pa., for the government.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN District Judge.

Before the court is the pro se motion of Jerome Cantor for a new trial. A brief recitation of the history of this case will facilitate the discussion of the allegations raised in this motion.

Cantor, along with seventeen others, was charged in Bill of Indictment 70–454 with conspiracy and using interstate telephone facilities to conduct an illegal bookmaking establishment. The government's case was largely dependent on "wiretap" surveillance obtained pursuant to court authorization. All of the defendants filed pretrial motions, pursuant to which hearings were held. My opinion and order of May 26, 1971, discusses and disposes of all pretrial motions filed. On June 3, 1971, a trial date of September 13, 1971, was set.

On August 19, 1971, the counsel for defendants, Howard Rubin and Jerome Cantor, petitioned the court for leave to withdraw as counsel. A hearing on that petition was held on September 2, 1971. Defendants' counsel was permitted to withdraw and counsel was appointed for defendant, Howard Rubin. Defendant, Cantor, however, refused to request or accept appointed counsel. Cantor expressed the desire to act as his own attorney and stated that he would not discuss the case with counsel should the court appoint counsel. Cantor further indicated that he would not hire private counsel and that he was prepared as of September 2, 1971, to try his own case on the date previously set for trial.

During the months of August and September, 1971, several defendants changed their pleas. On September 13, 1971, when the case was called for trial, six defendants were scheduled to be tried by jury. Two defendants waived a jury trial and agreed to a trial by the judge without a jury. The government dismissed the charges against two other of the six defendants because of lack of evidence. A fifth defendant, Joseph Ripka, did not appear and remains a fugitive at this writing. Consequently, only Jerome Cantor remained for a trial by jury. The case against Jerome Cantor therefore proceeded to a jury trial. Mr. Cantor made no motion or request for a continuance. The jury returned a verdict of guilty on four of the five counts in the indictment pertaining to Cantor and a verdict of not guilty as to one count.

At the conclusion of the trial, Cantor petitioned the court to proceed in forma pauperis to obtain the notes of testimony of his trial at the government's expense. A hearing was held and by order of October 15, 1971, this petition was denied. Defendant was allowed a reasonable time to purchase the notes of testimony. Defendant appealed the order of October 15, 1971 and that appeal was dismissed. Defendant has not seen fit to order the notes of testimony. Oral

argument was heard on the motion for a new trial. I will consider the allegations raised by the motion and/or at oral argument, without benefit of the notes of testimony.

Defendant's first two allegations posit error because the trial started on September 13, 1971, as set on June 3, 1971. The motion states, inter alia:

"1. I was under the impression that the trial would last at least six weeks because up until the day of the Trial, severance had been consistently denied. Within ten minutes after severance was granted, I was on trial. As a result, I did not have adequate time to assess the facts that:

"a. The trial would be of much shorter duration (a week) with the possibility that I could obtain the necessary funds to pay an attorney of my choice.

"b. I would no longer be able to avail myself of the other defendant's attorneys' advice and help in legal rulings, picking of the Jury, etc.

"c. In view of the fact that the Jury deliberated for a fairly lengthy time (five hours and overnight), there is every possibility that an attorney could have turned the tide in my favor.

"2. Court erred after granting severance to put me on trial immediately without time to confer with anyone. There were at least four other defendants waiting with their counsel to go on trial immediately, and in fact, they asked to go on trial, but the Court insisted that I be tried first. Even though I agreed, I feel that I should have had more than a few minutes to make such a momentous decision."

■ Suffice it to say that Cantor had more than a few minutes to make "such a momentous decision". On various occasions after September 2, 1971, I strongly and repeatedly advised Mr. Cantor that he should obtain private counsel or have court appointed counsel if unable to afford private counsel. In point of fact, he repeatedly rejected an offer to have counsel appointed, even if he may have qualified to have counsel appointed. The advice of this court fell on deaf ears. No request for a continuance was made. Mr. Cantor advised that he was ready for trial. The fact that he would not be on trial with other codefendants could in no way have prejudiced him. In light of Mr. Cantor's steadfast demand to act as his own counsel, I conclude that the first two allegations are totally without merit.

■ Cantor next alleges that it was error not to return certain money seized by the government. The evidence indicates that some money was seized from a safety deposit box in Cantor's name. However, this record is totally barren of any petition to return said money and under these circumstances, I could not rule on whether the money should be returned. If he had insufficient funds to obtain private representation, adequate counsel would have been supplied him.

Had Mr. Cantor been represented by counsel, the trial judge's not inconsiderable task of attempting scrupulously to guard defendant's rights by advising him of procedure, rules of evidence, and substantive law repeatedly throughout the trial would have been far less burdensome. As a matter of fact, far greater leniency in opening and closing speeches, presentation of defense (see particularly the broad scope permitted "character witnesses") was given Mr. Cantor than would have been permitted counsel. Mr. Cantor may well have been relying on such leniency as a "trial tactic" in his favor in voluntarily determining to try his own case.

■ Defendant's fourth contention, concerning the court's refusal to permit defendant from presenting inadmissible testimony, is likewise without merit. Prior to opening statements and throughout the trial of this case, side bar conferences were held to advise the defendant of the appropriate procedure. I specifically advised the defendant of the nature and purpose of an opening statement. He cannot now be heard to

say that because he told the jury, without objection, that he would prove certain facts which he was unable to prove by competent evidence that he should have a new trial.

■ The defendant contends that the government used perjured witnesses. Not one single instance of perjury by any witness has been demonstrated, let alone that the government deliberately used perjured testimony. As so often occurs where some witnesses testify unfavorably to a defendant, he contends that such testimony is perjury. His allegation of perjury in the motion for a new trial is totally lacking in substance. In any event, the jury was carefully instructed that if it found any witness to be knowingly false in any material part of his testimony, the jury could totally disregard all of the testimony of that witness.

In the opinion filed in reference to the suppression hearing, reported in 328 F.Supp. 561 (1971), I ruled that on the basis of the evidence therein presented, the wiretap order was expressly authorized by the Attorney General of the United States. Defense request that the Attorney General and Assistant Attorney General Will Wilson be required to appear personally and testify was rejected.

At oral argument, Robert Simone, Esquire, appeared for Mr. Cantor on the sole issue of the validity of the wiretap authorizations by the Attorney General. Several recently decided cases in other districts put in issue the procedure by which a petition for a wiretap order was authorized. United States v. Robinson, No. 71-1058 (5th Cir. 1971), and United States v. Cihal, 336 F.Supp. 261 (W.D.Pa.1972). Title 18 U.S.C.A. Section 2516(1) provides as follows:

" '(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications. . . . ' "

■ The affidavits submitted by the government in this case show that the Attorney General personally approved in writing, by initialled signature, the specific application for a wiretap order which was made to the then Chief Judge of this district. The affidavits indicate that the Attorney General personally authorized the application. Under these circumstances, I find that the application for a wiretap order was properly authorized and that there was full, complete and literal compliance with Title 18 U.S.C.A. § 2516(1).

■ A complete review of the record of this case indicates that Jerome Cantor, despite the fact that he voluntarily determined to act as his own lawyer, was afforded every possible benefit of the law. Throughout the trial he repeatedly told the jury that he admitted he was a "bookie." His only technical defense was that there was no conspiracy to use interstate telephone facilities to violate the state gambling laws. In addition to wiretap evidence, there was direct testimony from witnesses who utilized interstate telephone facilities to place bets with Jerome Cantor and to get interstate "line" gambling information from him. His defense appeared to be based on a theory of selective prosecution of Jerome Cantor and certain ethnic groups, and a contention that the investigating officers were particularly "picking on him." He was indicted with seventeen other persons who were residents of several different states. His assertions clearly lack any substance. The jury simply adopted the overwhelming evidence of guilt and convicted Jerome Cantor. There is no reason to grant a new trial.