**UNITED STATES of America,
Plaintiff-Appellee,**

· v.

**Gary BOWDACH, Defendant-Appellant.**

**No. 71–2304.**

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1973.

Daniel S. Pearson, Miami, Fla. (Court appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., James H. Walsh, Atty., Dept. of Justice, Tampa, Fla., John J. Robinson, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, GEWIN and THORN-BERRY, Circuit Judges.

TUTTLE, Circuit Judge:

We have held this case pending the decision by the court en banc in United States v. J. W. Robinson, etc., 472 F.2d 973. That decision was released on January 12, 1973, remanding the case to the district court for an evidentiary hearing "to determine whether the wiretap applications in this case were properly authorized under 18 U.S.C.A. § 2516 (1)." Although the case before this panel may differ in certain material respects from that described in *Robinson,* we nonetheless think it appropriate to follow the procedure set forth by the en banc court in *Robinson* and, accordingly, we remand to the district court for an evidentiary hearing on the validity of the wiretap procedures used in this case.

The case before us arises in the following context. As in *Robinson,* the issue was presented for the first time on appeal as to whether the wiretaps, evidence from which eventuated in the conviction of appellant Bowdach in the district court for violations of the Extortionate Credit Transactions Act, were properly authorized in accordance with the procedural requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq. According to the affidavit of Henry E. Petersen, then Deputy Assistant Attorney General of the Criminal Division, Department of Justice, a formal request for authorization to apply for the wire interception order was made by the Director of the FBI in April, 1970. This request was examined by a unit of the Organized Crime and Racketeering Section of the Criminal Division which determined that the request for authorization should be granted. The file was reviewed by Petersen who then forwarded it to the Office of the Attorney General along with his favorable recommendation. On April 15, 1970 in an initialed memorandum to Will Wilson, then Assistant Attorney General of the Criminal Division, Attorney General John Mitchell responded in the following language:

"This is with regard to your recommendation that authorization be given to James B. F. Oliphant, Special Attorney, Miami Strike Force, to make

application for an interception order under 18 U.S.C. 2518, authorizing the Federal Bureau of Investigation to intercept wire communications for a ten (10) day period to and from three telephones subscribed to by Sonny Brock Motors, located at 1068 Northwest 36th Street, Miami, Florida and bearing telephone numbers 635–8624, 635–8625 and 635–8626 in connection with the investigation into possible violations of 18 U.S.C. 892, 893 and 894 by Gary Bowdach and Louis Cicchini, a/k/a "Chick" Cicchini and others as yet unknown.

Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize James B. F. Oliphant, Special Attorney, Miami Strike Force, to make the above-described application."

Upon receipt of the memorandum Petersen dispatched a letter to James B. Oliphant advising him that he was authorized to present the application to the court.[1] As a matter of standard procedure this letter was signed by Petersen in Will Wilson's name. Wilson did not himself examine the file in the case.

Thereafter Oliphant presented an application to the federal court. He stated therein that:

". . . the Attorney General . . . has specially designated . . . the Honorable Will Wilson to authorize the affiant to make this application for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application."

Upon due consideration the court entered an order authorizing the wiretaps here at issue "pursuant to application authorized by the Assistant Attorney General . . . Will Wilson, who has been specially designated . . ." by the Attorney General.

In light of the foregoing, it would appear that this case differs from *Robinson* in two respects.[2] First, in the *Robinson* case, it was Mitchell's Executive Assistant, not Mitchell himself, who apparently initialed the memorandum to Will Wilson which stated, "Pursuant to the powers conferred on me by Section 2516 . . . you are hereby specially designated to authorize [the named individual] . . . to make the above-described application." Here, for all that appears, it was Mitchell himself who initialed the memorandum to Will Wilson.

Second, and far more important, is the fact that in this case Mitchell, by way of affidavit, averred as follows:

"On April 15, 1970, I approved a request for authority to apply for an interception order in this case. Attached is a copy of my personally initialed memorandum of that date reflecting my favorable action on the request.

"My memorandum of approval in this case constituted a notification to the Assistant Attorney General of the Criminal Division that the discretionary action of approving the request to make application to the court for an interception order was taken by me."

At oral argument counsel for Bowdach agreed to waive any objection to the procedure of supplementing the record by

---

1. In pertinent part the letter reads: " . . . [Y]ou are hereby authorized, under the power specially delegated to me in this proceeding by the Attorney General . . . to make application to a judge of competent jurisdiction for an order . . . authorizing the Federal Bureau of Investigation to intercept wire communications from the above-described three telephones for a period of ten (10) days."

2. Under the disposition we make of this case, of course, it will be the function of the district court to determine the actual facts pertaining to the procedures followed by the Justice Department in authorizing the application for this particular wiretap. We merely state the circumstances of the case as they have appeared to us from the affidavits submitted to this panel in order to set forth the issues which we think this case presents.

way of affidavit, provided such affidavits recited facts based on personal knowledge, and were not merely interpretative or conclusory. In his supplemental brief he now argues that the statement contained in Mitchell's affidavit falls within the latter category and thus cannot be considered, at least by this court, as a statement of facts based on personal knowledge. Because of the contention that Mitchell's statement might be viewed as merely construing the legal impact of his memorandum to Will Wilson and, therefore, as stating a conclusion of law as to what the memorandum signified, we think we should not undertake to resolve this issue on the record before us. Upon remand the district court should determine whether Mitchell himself authorized the application or whether the memorandum in fact designated Will Wilson to undertake the discretionary act of authorization.

If the court finds that the Attorney General did not himself authorize the application, then it would appear that the procedure followed in this case is, as a legal matter, virtually indistinguishable from the situation described in *Robinson*. If, on the other hand, the court finds that the Attorney General did in fact personally authorize the application, as his affidavit suggests, then the legal effect of this action is quite different from *Robinson* and the disposition of the case depends on whether or not the district court's order authorizing the particular wiretap and the application upon which this order was based were defective inasmuch as they identified Wilson, *not* Mitchell, as the authorizing official.[3]

Prior to the oral argument of this case appellant Bowdach moved to remand to the district court for an evidentiary hearing on the wiretap issue or alternatively to require the government to supplement the record on appeal. The government joined in the motion to remand and we carried the motion with the case.

We have concluded, on the basis of *Robinson,* that it would be improper to have the record in this case supplemented on appeal. We, therefore, grant the motion to remand.

Remanded for further proceedings in accordance with this order.

---

3. The Robinson situation turns on the interpretation of Section 2516(1), Title 18 U.S.C.A., the situation above described in Section 2518 of the Act.