**UNITED STATES of America**

v.

**Gary BOWDACH.**

**No. 71–114–Cr–CA.**

United States District Court,
S. D. Florida.

July 13, 1973.

Gary Betz, Dept. of Justice Strike Force, Miami, Fla., for the Government.

Daniel S. Pearson, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

ATKINS, District Judge.

Two issues are presently before the Court: 1) whether then Attorney General John N. Mitchell personally authorized the wire interception request in this case [1] and 2) if he did so authorize, whether a mistake in the recital of facts as to the identification of the authorizing individual contained in an application for a wiretap order and reiterated in the order itself [2] constitutes a fatal defect under the statutory framework of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. Suppression of evidence gathered as a result of that tap and admitted at petitioner-appellant's trial depends on the resolution of these issues.

The question of the validity of the wiretaps was raised for the first time on appeal. United States v. Bowdach, 474 F.2d 812 (5th Cir. 1973). The case *sub judice* was held by the United States Court of Appeals for the Fifth Circuit pending its decision en banc in United States v. Robinson, 468 F.2d 189 (5th Cir. 1972) (panel opinion), 472 F.2d 973 (5th Cir. 1973) (en banc opinion), 359 F.Supp. 52 (S.D.Fla.1973) (findings and conclusions upon remand). As in *Robinson*, this case was remanded for an evidentiary hearing on the procedures utilized by the Office of the Attorney General in securing a wiretap, evidence from which led to the conviction of petitioner-appellant for violations of the Extortionate Credit Transactions Act, 18 U.S.C. §§ 891 et seq. To expedite the proceedings, the instant case and others similarly remanded or pending were consolidated before Judge William O. Mehr-

---

1. This issue relates to 18 U.S.C. § 2516(1) which reads in pertinent part:

 The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of—

 \* \* \* \* \*

2. This issue relates to 18 U.S.C. § 2518(1)(a) which reads:

 (1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

 (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

tens for an evidentiary hearing.[3] That hearing was held on March 19–20, 1973. This case has been referred to this Court for appropriate findings of fact and conclusions of law.

A necessary predicate for resolution of the issue of the validity of the wiretap order is a thorough recitation of the facts and circumstances surrounding the order. To glean this information, the Court has examined the affidavits filed in the Court of Appeals by then Deputy Assistant Attorney General of the Criminal Division, Department of Justice, Henry Petersen, and by John N. Mitchell, the Attorney General at the time of authorization of the pertinent wiretap. The testimony elicited at the March 19–20 evidentiary hearing from Petersen, Mitchell, Sol Lindenbaum, Executive Assistant to the Attorney General, Will Wilson, then Assistant Attorney General of the Criminal Division, and Harold Shapiro, Deputy Assistant Attorney General, has also been examined. According to these sources, the procedures hereinafter delineated were employed by the Department of Justice in obtaining permission to seek this Court's authorization for a wiretap.

A formal request for authorization to apply for a wire interception order in this matter was made by the Director of the Federal Bureau of Investigation on April 1, 1970. A file including copies of the proposed affidavit, application, and order was examined in a special unit of the Organized Crime and Racketeering Section of the Criminal Division. The attorney in that section to whom the matter was referred, David E. Holt, and his supervisor, Philip T. White, examined the file to see whether the papers were in proper order. Recommending favorable action on the request, Holt and White submitted the file for review to Edward T. Joyce, a Deputy Chief of the Organized Crime and Racketeering Section, and William S. Lynch, Chief of that section, both of whom recommended approval of that request. The file was sent to Henry Petersen, who similarly endorsed the recommendation for authorization. Upon receipt by the Attorney General's Office, Sol Lindenbaum prepared a short memorandum reflecting his approval of the proposed interception.[4] The file, now including a detailed memorandum of the facts and circumstances surrounding the request, was sent to the Attorney General himself. He subsequently routed the file, with an attached memorandum dated April 15, 1970, entitled "Interception Order Authorization," [5] and bearing his initials to the office of Will Wilson, Assistant Attorney General. The Criminal Division dispatched a letter over the signature of Will Wilson to James B. F. Oliphant, an attorney in the Department of Justice, advising him that he was authorized to present the application to this Court.[6] Wilson's signature was affixed by Henry Petersen, pursuant to authority vested in him by Wilson to sign letters of this nature. In his application to this Court for authorization to commence wire interception, James B. F. Oliphant asserted that Mitchell had "specially designated in this proceeding the Assistant Attorney General for the Criminal Division of the Department of Justice, the Honorable Will Wilson to authorize affiant to make this application. . . ." Resultingly, this Court in its order dated April 15, 1970 authorizing FBI agents to conduct the wire interception, noted that the application had been "authorized by the Assistant Attorney General for the Criminal Division of the Department of Justice, the Honorable Will Wilson, who has been specially designated in this proceeding by the Attorney General of the United

---

and to 18 U.S.C. § 2518(4)(d), which reads:

(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application;

3. Order of Transfer, March 13, 1973.

4. See Appendix A.

5. See Appendix B.

6. See Appendix C.

States, the Honorable John N. Mitchell, to exercise the powers conferred on the Attorney General by Section 2516 of Title 18 USC. . . ."

▋ Declining to resolve the issue of whether Mitchell had personally authorized the request for an application to this Court for a wire interception order on the ground that Mitchell's affidavit in this regard might be deemed conclusory, the circuit court has directed this Court to make the appropriate findings in light of the evidentiary hearing. The problem before the Court centers upon the significance of the memorandum labeled "Interception Order Authorization." This problem entails a two-tiered analysis of 1) whether the personally-initialed memorandum is to be construed as designating Wilson to undertake only the ministerial task of conveying to the government attorney in the field the approval rendered by the Attorney General in the particular matter and 2) whether the memorandum adequately reflects the consideration which the Attorney General must give to a request for authorization to be consistent with § 2516.

Regarding the first aspect of the authorization problem, the Court concludes, on the basis of the affidavit submitted to the Court of Appeals by Mitchell and substantiated by his testimony at the March 19–20 hearing [7] that Mitchell did indeed personally review the file and authorize the application procedures. The memorandum cannot, in light of the additional testimony, be construed as authorizing Wilson to undertake the discretionary aspect of authorization. Mitchell and Wilson both testified that Wilson was never authorized to approve wire interception applications.[8] Mitchell was steadfast in maintaining that his policy from the outset was to personally authorize all wiretap applications unless extraordinary circumstances dictated otherwise.[9] Before he initialed the

memorandum Mitchell had been presented with, and analyzed, the proposed affidavit, application, order and detailed report.[10] The affidavits and testimony of Mitchell and Wilson indicate that the memorandum constituted a notification to Wilson that Mitchell had undertaken the discretionary power invested in him to approve the request.[11] Both Mitchell and Wilson have testified that the language in the memorandum to the effect that Wilson was "specially designated" to authorize the application and dispatch the letter reflected the procedure adopted for the transmission of the Attorney General's authorization.[12] To read the Interception Order Authorization of April 15, 1970 as delegating authority to authorize the application and not as personal authorization by the Attorney General would, in light of the surrounding circumstances, "elevate semantics above reality." United States v. Whitaker, 343 F.Supp. 358, 360 (E.D.Pa. 1972). *See also,* United States v. Ceraso, 467 F.2d 647 (3d Cir. 1972); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Piscano, 459 F. 2d 259 (2d Cir. 1972); United States v. Askins, 351 F.Supp. 408 (D.Md.1972); United States v. Cantor, 345 F.Supp. 1352 (E.D.Pa.1972), aff'd 470 F.2d 890 (3d Cir. 1972).

Similarly, surrounding circumstances must be considered to adequately discern whether the personally-initialed memorandum, brief as it was, was sufficient to represent authorization by the Attorney General within the meaning of § 2516. At least two other courts have addressed this aspect of the authorization problem and have found the memorandum adequate to reflect the consideration the Attorney General gave to the requests. United States v. Consiglio, 342 F.Supp. 556 (D.Conn.1972); United States v. Doolittle, 341 F.Supp. 163 (M. D.Ga.1972). The Court finds then, ac-

---

7. Evidentiary Hearing, March 19–20, 1973, Judge William O. Mehrtens, presiding. Transcript (Tr.) 36–134.

8. Tr. at 58–59, 99–101, 138, 266–68.

9. Tr. at 36–59.

10. Tr. at 36–59, 101.

11. Tr. at 36–59, 99–101, 266–68.

12. Id.

cording to all the evidence, that the Attorney General did *in fact* authorize the application for an order to initiate wire interception in this case. Any apparent conflict with this conclusion attributable to the ambiguous language of the Interception Order Authorization and the Will Wilson letter is clarified and eradicated by the affidavits and testimony of the Attorney General and the Deputy Assistant Attorney General.

■ The second issue before this Court is a more difficult one, at least from a policy perspective. The question is whether the disparity between the recital in the application to this Court, and contained in the subsequent order, that Will Wilson was the "authorizing individual," and the proof alluded to above that Mitchell actually authorized the tap, is a fatal disparity.[13] This Court rendered an order in virtually an identical fact situation in which the appaent error was not deemed fatal. United States v. Erra, 72–314–Cr–CA (S.D.Fla. June 12, 1972). The conclusion reached in that case was in substantial accord with opinions rendered by other courts faced with a similar challenge. United States v. Ceraso, *supra*; United States v. Cox, *supra*; United States v. Piscano, *supra*; United States v. Cantor, *supra*; United States v. Whitaker, *supra*; United States v. Consiglio, *supra*; United States v. Doolittle, *supra*; United States v. Becker, 461 F.2d 230 (2d Cir. 1972); United States v. Vigi, 350 F. Supp. 1008 (E.D.Mich.1972); United States v. DeCesaro, 349 F.Supp. 546 (E. D.Wis.1972); United States v. Kohne, 347 F.Supp. 1178 (W.D.Pa.1972); United States v. Mainello, 345 F.Supp. 863

(E.D.N.Y.1972); United States v. D'Amato, 340 F.Supp. 1020 (E.D.Pa. 1972); United States v. Ianelli, 339 F. Supp. 171 (W.D.Pa.1972), *Contra*, United States v. Chavez, 478 F.2d 512 (9th Cir. 1973), cert. granted, 412 U.S. 905, 93 S.Ct. 2292, 36 L.Ed.2d 969 (1973); United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972), *aff'd sub nom.* United States v. Giordano, 469 F.2d 522 (4th Cir. 1972); United States v. Casale, 341 F.Supp. 374 (M.D.Pa.1972), *rev. sub nom.* United States v. Cesaro, 467 F.2d 647 (3d Cir. 1972).

I am fully cognizant of the recent orders rendered by my brother Mehrtens in similar cases.[14] Those orders adopted the analysis propounded by the Ninth Circuit in *Chavez*, which court stands alone among the four circuits that have squarely addressed the issue.[15]

■ In sustaining against attack what appears on the surface to be a departure from the requirements of § 2518, it is essential to consider the policies underlying Title III. Title III was designed to achieve a balance between the need for effective law enforcement techniques to battle the increasing sophistification of organized crime and the incursions upon individual privacy resulting from the utilization of those techniques.[16] Congress sought to abide by the constitutional requirements set forth by the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).[17] In those cases the Court delineated threshold considerations that would afford a minimum standard of constitutionality; in-

13. A collateral issue is the effect, if any, of the signing of Will Wilson's name to the authorization letter by Henry Petersen.

14. United States v. Davis, No. 72–241–Cr–JE (S.D.Fla. June 4, 1973); United States v. Laff, No. 70–450–Cr–PF (S.D.Fla. May 31, 1973); United States v. Marder and United States v. Winer, 362 F.Supp. 484 (S.D.Fla. 1973); United States v. Sklarloff, et al., 362 F.Supp. 478 (S.D.Fla.1973).

15. The Fourth Circuit in United States v. Giordano, 469 F.2d 522 (4th Cir. 1972) inti-

mated that an error in identification of the authorizing individual might not render a wiretap order defective. That court upheld a district court's suppression order, which was based on a failure to follow the structures of § 2518, on the alternative ground of a failure to abide by § 2516.

16. S.Rep. 1097, 1968 U.S.Code Cong. & Adm.News, pp. 2112, 2159.

17. Id. at pp. 2161–2162.

terposition of a neutral and detached judicial authority, existence of probable cause, manifestation of particularity, minimization as to time and seizure, exercise of dispatch and notice. Congress apparently desired to go beyond these guideposts and establish the additional requirements of centralization and uniformity of policy-making. § 2518 was designed to affix the lines of responsibility[18] as a corollary to promoting a uniform policy in wire interception. Thus, although considerations of centralization and uniformity of decision-making are adjuncts to the protection of privacy, those considerations do not reach the level of constitutional status. This is not to suggest, however, that blatant disregard for the statutory-based mandates of Title III will be countenanced. On the contrary, this Court is attuned to the rightful concern of the people to be free from institutional transgressions of legal norms. The Court notes the concern manifested by the Ninth Circuit in *Chavez*, and reiterated in Judge Mehrtens's opinions, that to "wave away the identification provisions as mere technicalities . . . would be to countenance an apparently deliberate deception of the courts. . . ." But this Court is hard-pressed to detect any perpetration of material fraud when the Attorney General in fact authorized the wire interception. "(I)t would, therefore, in no way have benefited the Government to deceive the Court into thinking that the Attorney General made the authorization." *Consiglio, supra*, 342 F.Supp. at 560 n. 6. The courts should not ascribe such reprehensible motives to our nation's highest law enforcement officials in the absence of strong evidence to that effect. A close reading of the evidentiary hearing on March 19–20 fails to disclose any such evidence. The Court is convinced, therefore, that deviation from the identification requirements of § 2518, while reflective of a perpetual bureaucratic tendency, does not violate the spirit of the congressional scheme. Once the Attorney General personally approved the request for authorization, the goals of centralization and affixation of responsibility were satisfied. *Cox, supra*, 462 F.2d at 1300. Thus, unless petitioner-appellant can demonstrate some tangible form of prejudice to his rights resulting from the misidentification when the evidence reveals that the overall policies of Title III have been complied with, the drastic remedy of suppression is not warranted. As the Eighth Circuit stated in *Cox*,

> The requirement in 18 U.S.C. § 2518 that the authorizing officer be named was designed to insure that decisions to wiretap were made by the named officials and did not reach into the lower echelons of command. That requirement should not be construed so inflexibly as to invalidate a wiretap application personally authorized by the Attorney General of the United States simply because the request recites the Assistant Attorney General as the applying officer.

*Cox, supra* at 1300.[19]

Judge Miller in *Focarile, supra*, engaged in an elaborate discussion of the legislative history behind the enactment of § 2518 and § 2516 and the relationship between the two. Nothing in this opinion violates the spirit of that relationship. This Court observes that the Fourth Circuit did not adopt Judge Miller's reasoning in affirming his decision. Rather, the Circuit Court focused upon the failure of the Attorney General's Office to abide by the requirements of § 2516. In so doing, the Court asserted:

> Perhaps it can plausibly be argued that when an application is properly authorized and only the identity of the

18. S.Rep. 1097, *supra* at pp. 2184–2185.

19. Because this Court finds that the mistaken identification of the authorizing individual under these circumstances is not a fatal flaw in the wire interception procedures, the fact that Will Wilson's name was signed by Henry Petersen is insignificant. *See Cox, supra*, 462 F.2d at 1300.

source is mistakenly transmitted to the judge, he would have authorized the wiretap had he known the real facts.

*Giordano, supra,* 469 F.2d at 530.

The Court concludes on the basis of all the evidence before it now that it would have authorized the wire interception in this case, had all the facts been before it then. Such authorization would not have, in the Court's opinion, been contrary to the spirit of Title III. Accordingly, it is hereby ordered and adjudged that the motion to suppress is denied.

## APPENDIX A

April 15, 1970

To: The Attorney General

Re: FBI request for permission to seek wiretap order in Miami

This is a request for authority to seek a 10-day tap on three phones at Sonny Brock Motors, Miami, which are being used by two hoodlums, Gary Bowdach and Louis Cicchini, in a loansharking operation. The application is based on information supplied by informants who are afraid to testify. One of them himself arranged to borrow money from Bowdach and Cicchini late last year by calling them at Sonny Brock Motors.

I agree with the Criminal Division that the statutory requirements of probable cause are met here.

S.L.

## APPENDIX B

UNITED STATES GOVERNMENT DEPARTMENT OF JUSTICE

*Memorandum* ·

TO : Will Wilson DATE: APR 15 1970
 Assistant Attorney General
 Criminal Division JNM:DEH:skh

FROM : John N. Mitchell
 Attorney General

SUBJECT: Interception Order Authorization

 This is with regard to your recommendation that authorization be given to James B. F. Oliphant, Special Attorney, Miami Strike Force, to make application for an interception order under 18 U.S.C. 2518, authorizing the Federal Bureau of Investigation to intercept wire communications for a ten (10) day period to and from three telephones subscribed to by Sonny Brock Motors, located at 1068 Northwest 36th Street, Miami, Florida and bearing telephone numbers 635–8624, 635–8625 and 635–8626 in connection with the investigation into possible violations of 18 U.S.C. 892, 893 and 894 by Gary Bowdach and Louis Cicchini, a/k/a "Chick" Cicchini and others as yet unknown.

 Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize James B. F. Oliphant, Special Attorney, Miami Strike Force, to make the above-described application.

## APPENDIX C

Mr. James B. F. Oliphant
Special Attorney
Miami Strike Force
Miami, Florida

Dear Mr. Oliphant:

 This is with regard to your request for authorization to make application pursuant to the provisions of Section 2518 of Title 18, United States Code, for an order of the court authorizing the Federal Bureau of Investigation to intercept wire communications for a ten (10) day period to and from three telephones subscribed to by Sonny Brock Motors located at 1068 Northwest 36th Street, Miami, Florida, and bearing numbers 635–8624, 635–8625 and 635–8626, in connection with the investigation into possible violations of 18 U.S.C. 892, 893 and 894 by Gary Bowdach and Louis Cicchini a/k/a "Chick" Cicchini and others as yet unknown.

 I have reviewed your request and the facts and circumstances detailed therein and have determined that probable cause exists to believe that Gary Bowdach and Louis Cicchini a/k/a "Chick" Cicchini and others as yet unknown have committed and are committing offenses enumerated in Section 2516 of Title 18, United States Code, to wit: violations of Sections 892, 893 and 894 of Title 18, United States Code.

I have further determined that there exists probable cause to believe that the above-named persons will make use of the above-described three telephones in connection with those offenses, that wire communications concerning the offenses will be intercepted, and that normal investigative procedures are unlikely to succeed or are too dangerous to be used.

Accordingly, you are hereby authorized, under the power specially delegated to me in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, to make application to a judge of competent jurisdiction for an order pursuant to Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Investigation to intercept wire communications from the above-described three telephones for a period of ten (10) days.

Sincerely,

(s) Will Wilson
WILL WILSON
Assistant Attorney General